22-303. Thank you. Good morning. May it please the court. My name is Donna Newman, and I represent Carlos Argueta, who comes before the court and stating, quite compelling I believe, that the appellate waiver that he entered into, pursuant to his plea agreement with the government, was not knowing and voluntary. What I am talking about when I say that is this specific provision of the plea agreement, which really is at issue here. And that's found at A033, which is contained in paragraph four of the plea agreement. And specifically, the language that says, the defendant further waives the right to raise on appeal or on collateral review any argument that, one, the statutes to which the defendant is pleading guilty are unconstitutional, and two, the admitted conduct does not fall within the scope of the statutes. Mr. Argueta, at the time, was 20 years old. He had a 10th grade education. The crimes to which he was pleading guilty occurred when he was 16. And he had a criminal history record of zero at that point. I'm actually very sympathetic to, I think, the argument that you're making. But the United States v. Cook, which just came out, seems to foreclose the argument, but perhaps I'm missing something. So would you address that? Okay, I'm sorry, I'm not familiar. Is that the case that came out about two days ago where they agreed to a waiver because... Well, October 16. So that was an appellate waiver. Are you not familiar with that? No, I'm sorry, Your Honor, I am not. Okay, that's okay. But this particular language, I'm not talking about the general waiver, which the makes this an even more compelling argument. Because while he did review with Mr. Argueta the language with respect to the amount of years he was waiving, if the court, in other words, the appellate waiver, if he received a sentence of, I believe, 720 months, 60 years, the absence, the very absence of this, where he did not direct his attention to this language which has legalese and very hard, the first time I read it, said, really? Really? It's very hard, and I know when I explain it to my clients, they do not get it. There was no inquiry whether or not, in fact, counsel had reviewed that provision. There was no inquiry whether, in fact, Mr. Argueta had understood that provision or asked for an answer to that specific portion of the provision. Yes, and that's the only thing I'm directing. He did go over, as I said, Judge Bianco, the amount of years. But that would lead one to believe that was the only thing that they were waiving. So we've also said, but again, I'm sympathetic to the arguments you've made, because I think probably the better practice is to, particularly with respect to the appellate waiver provision, just read the entire thing. But we've also said in the United States Supreme Court and a couple of other cases that we don't require district court judges to go line by line through an appellate waiver provision, even in connection with pretty important components of that provision. So how do you square what we've said with your argument? Yes, I am aware of those cases, thank you, Your Honor. But Federal Rule Criminal Procedure 11B1N does task the court, the district court, with the obligation not just to inform the defendant of the appellate waiver provisions, but to ensure that the defendant understands all aspects of the provision. And one of the things that we've said, I think in answer to that in prior cases, is that it's enough, for the district court judge to allocate the defendant as to whether the defendant has reviewed the plea agreement and understands the plea agreement, reviewed it with defense counsel. Well, Your Honor, I think that there has to be exceptions in the reality of the world. While it is true generally, but we're talking about very specific language that's difficult to understand. And what are we talking about? For the district court to say three lines, four lines in addition, do you understand that in fact if your gun discharge, which is really what we're talking about here, the 924C, was later determined that the crime of violence was not a crime of violence, do you understand you could not then appeal? Isn't the problem, though, that the district court probably didn't go through 95% of the words in the plea agreement, and I would assume that all of that is equally difficult for a lay person to understand, right? I mean, to talk about the right to counsel, well, what's your right to counsel? Is it all critical stages of the proceedings? I mean, you could make your argument as to almost any part of the plea agreement which the district court did not sit there and recite verbatim and then give a description of. So do you see my point? What is there about the appeal waiver that would be different from your raising a similar claim as to any other part of the plea agreement? The problem with that, Your Honor, is that the appeal waiver is what comes back to bite them. And so when there is a change... Well, it depends on the claim, right? I mean, maybe there's no appeal waiver. There are plenty of plea agreements I see with no appeal waivers, and yet there will be something that says, I don't know, any of the other rights that you're waiving, the right to counsel or something. You say, well, wait a minute, you didn't tell me that I had the right specifically to have a lawyer at a suppression hearing. And we would say, no, it says right to counsel. You allocated consistently with Rule 11. Yeah, I think there's a distinct difference here, and I think that because the Rule 11B1N does task them with court, with making sure that the defendant does understand the waiver, specifically that's what the Rule says. So it's directing the court, and it's a matter of two or three lines, even asking the attorney whether, in fact, they have. And because here, I would also just like to point out that the waiver should not be enforced in any event because it would be a miscarriage of justice to do so. And that is something that we all, that the circuits, even the cases that the government has cited, are where the courts of appeals have recognized a miscarriage of justice. Why? Because for that reason, it's like miscarriage of justice with a fundamental right. That is where you're sitting in jail for a crime that's no longer a crime. So there was a separate predicate now, attempted murder? I think we all agree that the conspiracy for count six is not a violent predicate. But the assault, the attempted, which I'll speak to in a minute, the attempted murder, I recognize Pastore. And we preserve our rights under that. And someday maybe the Supreme Court will rule on it. But in the meantime, we just preserve our rights. But there is something very important. Assault, which the government suggests, is also the court assuming that we didn't have Pastore for a moment. I know. Only because assault is not a lesser included crime of attempted murder. And that's what the government suggests. So what they're suggesting is that even if we didn't have Pastore, for example, and the court said, well, the attempted murder is not a crime of violence, you could look to the assault. It is not, under New York State law, assault is not a lesser included of attempted murder. And nowhere within this record do we have Mr. Argueta allocuting to assault. Well, can I just ask you this on the miscarriage of justice proposition? Am I correct? I'm reading page 66 of the elocution where the defendant confirms that he got out of the car, shot an individual in the chest trying to kill him. He admitted that, right? Yes. And he admitted that he used a .45 and that he participated in an attempted murder in order to maintain his membership and his position in the MS-13 gang. So I guess, and then it goes on with other things, he could have been charged with any number of crimes here, right? He was charged with any number of crimes, right? Well, I don't- Well, let me just- I understand what you're saying and I know- Well, hang on, but let me walk through it. He was charged with a number of crimes, correct? That's correct. Okay. If this had been known to the parties of how certain case law would play out, it's probable that the plea negotiations would have played out in some other way that still would have wound up with him admitting, given that he's admitted that he shot somebody in the chest. And I guess this is perhaps a handicap that you haven't looked at the Cook case where my impression was at the end of the Cook case we said, look, one of the reasons why there's no miscarriage of justice in applying these appeal waivers to situations like this is that if we dial back the clock, it's very likely he would be charged with something equivalent and probably be getting the same charge. And again, I understand you haven't seen Cook, but- I understand, but in fact, in the case that I submitted as a 28-J, which was out of U.S. v. Williams, which dealt with Goudal, it goes through that analysis where they reached the miscarriage of justice in that case. But that's the- Here, what is- I am not saying he could not have been committed charged with state crimes, certainly, by that allocution. It's murder, right? Attempted murder in the state. What I'm saying is what federal crime could he have been and in addition- Attempted by car murder. Attempted by car murder. He shot somebody in the chest to maintain his position in the MS-13. Isn't that attempted by car murder? Yes, and he was charged with- Is that a yes? Yes, but he was charged with racketeering and part of what we also say is that in our brief, that there was no consideration because you only have one life. We all- I guess we can- That's beyond the jurisdiction of this court to- Right, I understand. I was about to say, I don't know, but I was going to agree. Although we're happy to take jurisdiction. But in any event, assume that to be true or to take judicial notice on the base on the information we have to date. That is all that he got in his plea agreement. And so when we talk about did he get consideration, if in all the cases the only charges he could have gotten was more life, again, as we indicate in our brief, he only has one life to live. So I see my time is up. Before, and I'll do this maybe if you want me to remind you at the end, but it would be actually helpful since you have not read U.S. v. Cook to get the letter. Absolutely. After that. I will do it. After this too. Thank you very much. And I don't- I'm not sure how I missed it because I'm on all those lists, but- No worries. No worries at all. We keep busy. We'll hear from the government. Thank you, your honors. May it please the court. Good morning, your honors. Paul Scotti for the United States. Your honors, first of all, with respect to the enforceability of the appellate waiver, the court did earlier in July deny our motion to dismiss this appeal based on the appellate waiver. However, the government is fully prepared to address the issues- My understanding is that we just pushed this into full briefing. I don't recall that we actually ruled. My impression is that we weren't taking a position on the merits, but as I recall, the government filed a motion to dismiss. The defense responded not with a simple response to a motion, but with a full blue brief, which contained a merits argument. And then we referred it to the merits panel so that both of the issues, my understanding, are now ripe for decision, including the appellate waiver. So now you have it referred to this panel. So please proceed. My apologies, your honor. Thank you for the clarification, your honor. So starting with the involuntary, there was valid consideration, and as the court indicated earlier with the decision in Cook from two weeks ago, that is essentially dispositive of the issues raised by defense counsel. Why do you say, why do you qualify it with essentially? I didn't mean to qualify it. The reason I qualified it, your honor, is because the case in Cook addresses and is dispositive with respect to the knowing and voluntariness of the waiver, as well as the waiver applying to challenges of conviction. It did not address the consideration issues that the defendant raises here. But with respect to the waiver and with the enforceability of it in the context... Did it not address, well, not every case is different, but did it not generally address consideration, even in the context of that case? I don't believe, from my reading of it, that the defendant in those cases raised the issue of consideration. It was more of a knowing and voluntariness of it. And then the issue of its enforceability in the context of a challenge to a conviction as opposed to a challenge of a collateral attack of a sentence after a change in law. And that case was very clear and very specific. First, with respect to the knowing and voluntary nature of the waiver, the facts in that are very similar to the facts here. In fact, the record here is even more comprehensive and thorough than the record there. And the court held that where the defendant acknowledged that he read the plea agreement, that he signed the plea agreement, that's a knowing and voluntary waiver. And the court held that also, with respect to the detailed recitation of the specific term in there that dealt with the appellate waiver, the court there did the same thing that the court in this case did. It addressed the threshold number from which the waiver, the sentence that the waiver was applying, but did not specifically address the prohibition on any challenge to any subsequent convictions. And what the court said is the court's omission of one aspect of the waiver did not inject ambiguity into the plea agreement's otherwise clear terms. That's the same situation that we have here. The district court here went through with the defendant that it was translated from English to Spanish, that he read it, that he discussed it with his attorney, and that when he signed it, he understood all the terms. So that full allocation, which seems to be- Is it clear from, and I'm very familiar, I think we're all familiar with these plea agreements, and in particular the appellate waiver provision, but is it crystal clear that someone, that if you're a defendant, that you are agreeing not to be a crime? Your Honor, I think it is. The language does say that they have waived their right to challenge their count of conviction as being unconstitutional. In this case, the defendant did allocute that he not only read the plea agreement, he discussed it with his attorney. I think there has to be deference given to that, that the attorney-client interaction in reviewing the plea agreement has to be relied- Is there no exception, in your view, in the government's view, to this? Your Honor, I don't look at- How far do we go? So if everything to which, just hypothetically, I'm not suggesting that this is this case, but if everything to which the defendant pleads turns out to be unconstitutional, the underlying statute would say everything, can a defendant challenge that? Your Honor, I think it goes back to the language in the waiver itself and the language in the plea agreement. And is that language so complex that it's the term- So if by virtue of subsequent Second Circuit or it turns out that the convictions, the underlying convictions, none of them are valid, I can't challenge that. I've got to spend time in prison. I've got to spend 30 years in prison. Is that- Your Honor, that is what they are waiving in the agreement. And it is in clear terms, it's not- I'm sorry to interrupt, but I'm very interested in this. You can interrupt as much as you want. I was in your position once, but I'm very interested in the government's position. Why shouldn't we see this as a claim, and maybe it's a claim for some other form of collateral attack, although the appellate provision also covers collateral attacks, as a claim of actual innocence? Well, Your Honor, are we talking about in this particular situation, or are we speaking generally again? Your Honor, I think actual innocence and changes in the law I view as two different things. The law can change based on the view of the constitutionality of a particular law, and the conduct is still the same. No, no. As Judge Nardini pointed out, there's an allocution that conflicts with any claim of actual innocence. I appreciate that, but you're making a very aggressive argument. I mean, the government is making a very aggressive argument, and I'm just trying to understand what the limits are, if any, to that argument. I understand, Your Honor. I do feel that our argument is consistent with the Cook case and what this Court's holding in Cook was. I look at actual innocence as a factual issue of evidence, and that the person actually did not do what they were charged with doing at the time they were charged, as opposed to a subsequent change of law when courts get involved and decide that a particular statute is no longer appropriate and constitutional, which is what we have in this case. It's interesting to think about the concept of the change in law, because the Court when it views what it's doing as a change in the law, it makes it applicable prospectively but not retrospectively. When it views what it's doing as interpreting the law as it exists at the time, even if it hadn't yet been recognized as such, it makes it retroactively applicable. And I think the changes we're talking about here fall into that latter category. So I'm wondering whether the framework of a change in the law is really the right framework when we're talking about that kind of new understanding of what the law has always provided. Your Honor, I think that's well said, Your Honor. And I think more than just a change in the law, the term we see is that it's not constitutional. It's decided to be not constitutional. And I think that's what we're dealing with here when it comes to these convictions that are predicated on crimes of violence that are no longer deemed to be crimes of violence. And courts have held that with collateral attacks, even in situations like this, are still presumptively enforceable. And there is a compelling interest in doing that. And knowing a voluntary waiver must be enforced or that consideration is meaningless. And that's no longer a bargaining chip. Would you talk about that? Because the waiver has value to the government and to the defendant because it's backed up by some other consideration, right? The government dropping charges or simply through the passage of time, right? This plea was in what year? This plea was in 2019, I believe it was. So that would mean four years go by. So if we were to vacate this say, hypothetically, let's say today, that would mean four years would have gone by. And for the government to try to rebuild whatever alternate case it might have been able to put forward in 2019 when it was presumably ready to go to trial, right? Speedy trial requirements would have required the government to be able to move forward expeditiously. We don't know, right? Your witnesses could be dead, missing. Evidence could have been subject to spoliation. So I'm assuming that part of the consideration that the government is giving up, assuming it's valid consideration here in terms of whatever, part of it is the government foregoing these other prosecutorial options, right? And then if you revive a challenge that someone waived several years on, you are prejudicing what the government would have been able to do years earlier, right? Yes, Your Honor. It's prejudicial and it deprives the government of the benefit of the bargain that they thought they were getting four years earlier. And if the government knew that waiver was not going to be enforced the way it would, it probably wouldn't be giving as much in consideration, right? Yes, Your Honor. Can I ask a little question? Just a quick follow-up on the consideration. I'd be interested in your response to the argument that you only have one life. So pleading to a potential life sentence in exchange for dropping three other life sentences or another life sentence isn't really giving up anything because you wouldn't have been able to serve more than one life sentence. Your Honor, what I think the consideration that was provided in this case is that the defendant was charged with an eight count indictment. He only pled guilty to two of the counts and the other six were dismissed. Now the one substantive RICO count did have a maximum sentence of life. However, what the plea agreement offered him was a measure of certainty in that there were fewer counts that the court could sentence the defendant on. And so rather than facing another Vicar murder count, another Vicar conspiracy to murder and assault with dangerous weapons and attempted murder counts, all that would have been lined up for this court to consider, all the court could sentence the defendant on was one substantive RICO count and a 924 and the 924C. So it gave a measure of certainty by limiting the potential exposure that this defendant had at the time of sentencing. It did put him in a better position when he came to sentencing than it would have if he just pled to the indictment. As I understand it, is he set to be released in 2042? I believe so, Your Honor. He was sentenced to 30 years. As opposed to many years after that. Yes, Your Honor. So while he did the term, the guidelines was life plus 10 years, the ultimate sentence was 10 years. And the government's position is that that does demonstrate, while you can't reverse engineer that and work from the sentence backwards, but it does indicate that there is likely some benefit of the bargain that he did receive. But at one point you said it reduced his potential sentence. It didn't actually reduce his potential sentence. It sounds like what your argument is, he reduced the likelihood that he would be sentenced to that from these other counts that would have been present that the court would assign a number to that could potentially have led to a higher aggregate number. It's unknown what the court would have done if he pled to the indictment, but the point is that at the time of the agreement, a defendant's trying to get himself in the best possible position that he can. And that is to be sentenced on one substantive count with the 924C as opposed to the indictment. And also it did give him coverage. This plea agreement also covered the defendant from any additional crimes that could be brought in connection with his offense conduct. And that was significant because the murder of Jose Peña, which he was charged with, was committed because the defendant believed Jose Peña was cooperating in connection with the attempted murder shooting that happened six months earlier. The government charged that as a substantive vicar as well as a RICO predicate, but that could be charged as obstruction of justice murder. And so that wasn't charged at the time. It gives the defendant a measure of finality that knowing that there can't be any additional charges brought in connection with the offense conduct. So there was consideration for this plea agreement and we think that it is enforceable in this case. I'm going to let you read that. Your Honor, this is the order that we received in connection with our motion to dismiss. I'm sorry, my eyes got worse. I also forgot my glasses so I can't see a thing. I'm sorry. This is a new development I'm having. At a stated term, yes. May it please the Court, Amy Bissett for the United States. Could you just step over to the microphone? Yes, I can. Can you hear me now? I need to be in the middle. There we go. It is docket entry 112 on July 17, 2023. And it says the government moves to dismiss this appeal as barred by the waiver of appellate rights contained in the appellant's plea agreement. Upon due consideration, it is hereby ordered that the motion is denied. It is denied. The appeal be referred to a merits panel. My understanding, we did not specify in the order whether it was denied with or without prejudice. My understanding and my recollection, as we have a majority of that panel sitting here today. I focused on the referral. So you have in front of us, so we're dealing with the merits. May I ask you one more question? And it relates to retroactivity. So the Fourth Circuit seems to take a slightly different position with respect to these issues or similar issues involving appellate waivers where if it's not retracted, then the rule that we announced in the United States to be cooked, for example, applies. If it is retracted, then the waiver may not apply. Is there a reason why we shouldn't apply? Let's put to the side Kirk for a second. And I understand that counsel for is going to submit a letter on that. But is there a reason why we we shouldn't apply a similar analysis to these sorts of cases? Your Honor, I think the concern there would be that if they were always automatically retroactively applied and the appellate waivers in those situations would not be enforceable, it would gut that term as a valuable bargaining chip both for the defendant at the time of plea negotiations and for the government in terms of getting a benefit out of the plea agreement as well. It would render that provision, a very important provision, for both sides meaningless. And so I do think that there is a... It's not not meaningless. It's simply overridden by constitutional pronouncement, usually from the Supreme Court. We're not in the business of doing this that says this is retroactive. And that doesn't happen all that frequently. No, it's been happening a little bit more frequently in the last few years. But I agree with the Court. And the position is very well founded. I do believe that the provision itself, though, would suffer from that. And that's part of the reason why it's in there, is to give the government that sense of security from the situation that Your Honor was mentioning before, from having these come back to you four, five, six years later. And the defendant from... I'm sorry. No, of course. I understand that. This is potentially a big issue. Yes, Your Honor. But if we had a carve-out for certain kinds of constitutional claims, the government would then want more insurance. So it would start making people plea not to the top count, but the top two or three counts. Correct, Your Honor. Thank you. Thank you very much. I'm going to go buy some glasses now, Your Honor. Thank you very much. You have three minutes. Thank you very much, Your Honor. I just have a few points. I'm really passionate about this, having being that I practice in the District Court. And these, there were not that long ago that this provision didn't exist. And yes, the appellate waivers were upheld routinely. And then they put back this because of developments that happened in the Supreme Court, they put this new waiver. And so my position is it's not that much for the District Court to point it out. To ask counsel in a line, did you review with your client that provision of the waiver and explain it? If that's all that's essentially actual innocence. You're saying if we're going to enforce waivers of convictions of crimes for which one is actually innocent, we need to make sure that the court allocutes it? Well, yes, because miscarriage of justice is tied to actual innocence. And so, and we have, the Second Circuit has long held that it would be a violation of due process not to permit a valid waiver. So in other words, in your view, if the court had read those sentences to the defendant, you wouldn't be challenging the waiver even if it turned out, and I'm not saying that's true in this case, but even if it turned out that the 924C conviction wasn't in any way, shape, or form supported by the allegations? Me personally, I would certainly challenge it, but not on that basis. In other words, there's always an exception. No rule is without exceptions. And we have to look at some of these cases on the specific facts. So I can't say generally, or you must, it's a per se rule, if they did explain it, then no, I would agree that the appellate waiver and my client could then stay in jail for 10, 15, 20 years, although that crime is no longer a crime. That just eats away at our concept of justice. But the way that you started your argument in opening was to reference the fact that Judge Bianchino didn't specifically allecute him that. My understanding is that that is the core of your argument, and we've just been exploring some other arguments, but the core of your argument is the failure to allecute the defendant with respect to the specific two things that he was giving up. Yes, there's no question that I do feel that in this particular case that Mr. Algreda did not knowingly and voluntarily waive a right that he did not have a client with a 10th grade education who understands very little English and was obviously involved in this whole social milieu of MS-13s, no concept of the outer world, no experience with the criminal justice system, would understand that. I think it just defies logic and it upsets me because it shows that our criminal justice system looks on blindfold as opposed to the realities of the situation. If you could get the letter to us within a week, not a very long letter necessarily, and then of course we'll play it by ear with respect to how we want the government to respond, but it would be very helpful. Thank you very much. I do appreciate it. I'm sorry, there wasn't a 28-J letter and it skipped me by- No, no, no, no. No worries. Thank you so much. It was our decision.